## UNION RAILWAY COMPANY *vs.* MAYOR AND ALDERMEN OF THE CITY OF CAMBRIDGE & another.

The power of making regulations concerning the removal of snow from the tracks of street railways is given by law exclusively to the mayor and aldermen of the cities, and the selectmen of the towns, in which such tracks are located; and in the exercise of this power they may prohibit the removal of snow by the railway company at any and all times and places when in their judgment the public interests involved may require it.

It is no objection to an order of the mayor and aldermen of a city regulating the removal of snow from the track of a street railway, that it requires and permits such removal by the railway company only when it is allowed, and in a manner to be designated, by the superintendent of streets, or other officer having charge of the condition or repair of streets.

BILL IN EQUITY by a street railway company, setting forth that by *St.* 1853, *c.* 383, the Cambridge Railroad Company were incorporated for the purpose of constructing and using a street railway in the streets of Cambridge and Boston where their tracks might be located; that by *St.* 1855, *c.* 338, the plaintiffs were incorporated for the purpose of hiring said Cambridge Railroad; that the plaintiffs accordingly hired the same; that at the date of the lease the Cambridge Railroad Company had procured locations and constructed tracks running from Bowdoin Square in Boston to Harvard Square in Cambridge, and to Mount Auburn and North Cambridge; that the plaintiffs commenced and have since continued to run trips with their cars regularly, and have been in the habit of removing snow in the winter season from their track by means of snow-ploughs, and levelling down the snow or removing the surplus snow from the streets when required, so that the portion of the public using the streets with sleighs might be accommodated upon the sides of the tracks, while that portion of the public using the cars were also accommodated; that from this course no serious inconvenience has resulted; that by *St.* 1864, *c.* 229, concerning street railway corporations, the board of aldermen of any city in which a street railway is operated are authorized to establish by an order such rules and regulations as to the rate of speed, mode of use of the tracks, and removal of snow and ice from the same, as in their judgment the interest and convenience of the public require;

that the plaintiffs requested the board of aldermen of Cambridge to establish such rules and regulations, and thereupon the board of aldermen passed the following order :

· " In Board of Aldermen, December 21, 1864. *Ordered,* That the Union Railway Company be and is hereby prohibited from removing snow or ice from their tracks in any of the streets or upon any of the bridges of the city, unless said company shall have first obtained the consent of the superintendent of streets and drains therefor, which consent said superintendent is hereby authorized to give, when in his judgment the same shall be proper ; and, whenever such consent shall have been given, the snow and ice shall be removed in the manner and to the degree directed by said superintendent, and not otherwise. And the superintendent of streets and drains is hereby authorized, under the direction of the committee of roads and bridges of this board to contract with the railway company for the removal of ice and snow, and for the purpose to employ the men and teams belonging to the street department. *Ordered,* That all orders in relation to the removal of snow and ice inconsistent with the foregoing order be and the same are hereby rescinded."

The bill further set forth that on the day after the passage of the above order the superintendent of streets and drains of Cambridge refused to give his consent to the removal of the snow and ice from the plaintiffs' tracks, and forbade and prohibited the plaintiffs and forcibly restrained them and their agents from so removing the snow and ice, whereby the plaintiffs were prevented from using that portion of their track, to the great inconvenience and damage of themselves and of the public.

The plaintiffs afterwards filed a supplemental bill, setting forth that on the 22d of March 1865 the board of aldermen passed the following order : " *Ordered,* That the removal of snow and ice from the tracks of the Cambridge Railroad Company between Harvard Square and the dividing line between Cambridge and Boston be and the same is hereby forbidden ; " and that the defendants threaten to prevent the plaintiffs from removing the snow and ice from their tracks.

The prayer was for an injunction, and for further relief. The

defendants filed a general demurrer, and the case was reserved for the determination of the whole court.

*B. R. Curtis & C. T. Russell,* for the defendants, cited *Sts.* 1864, *c.* 229; 1853, *c.* 383; Gen. Sts. *c.* 44, §§ 1, 8, 22, 24; *c.* 18, §§ 75, 76; *Buffalo, &c., Railroad* v. *Buffalo,* 5 Hill, 209; *Roxbury* v. *Boston & Providence Railroad,* 6 Cush. 429; *Commonwealth* v. *Temple,* 14 Gray, 69; *Springfield* v. *Connecticut River Railroad,* 4 Cush. 63; *Commonwealth* v. *Nashua & Lowell Railroad,* 2 Gray, 56; *Commonwealth* v. *Vermont & Massachusetts Railroad,* 4 Gray, 22.

*H. W. Paine & G. G. Hubbard,* for the plaintiffs. The plaintiffs acquired, under the charters referred to, the franchise to con-struct and use a street railway, and to transport passengers at all seasons of the year by cars. *Commonwealth* v. *Temple,* 14 Gray, 69. *People* v. *Kerr,* 27 N. Y. 188; *S. C.* 37 Barb. 357. If they have the right to use their track, they must have all the power necessary to make that use available. The defendants, as surveyors of highways, have no authority over the tracks of street railways. By *St.* 1864, *c.* 229, § 18, the plaintiffs are bound to keep the streets in repair for a space including eighteen inches in width on each side of their track. The city, therefore, under Gen. Sts. *c.* 44, § 1, are exonerated from duty and liability as to so much of the highway. *Vinal* v. *Dorchester,* 7 Gray, 421. *Sawyer* v. *Northfield,* 7 Cush. 490. *Springfield* v. *Connecticut River Railroad,* 4 Cush. 63. Nor have the defendants any such power under the statutes concerning street railways. Under these statutes, the defendants act simply as a body of men on whom certain duties of a ministerial or *quasi* judicial nature are devolved. *Cambridge* v. *Cambridge Railroad,* 10 Allen, 50. *Young* v. *Yarmouth,* 9 Gray, 386. *Vinal* v. *Dorchester,* above cited. *Sts.* 1855, *c.* 338, §§ 2, 3, 8, 9; 1864, *c.* 229, §§ 14–22, 34. The only authority on which this exercise of power can be based is that allowing the defendants from time to time to establish rules and regulations as to the rate of speed, mode of use of the tracks, and removal of snow and ice from the same. *St.* 1864, *c.* 229, § 16. Under this section they have just the same au-thority to regulate the rate of speed that they have to remove

snow and ice. Now can it be contended that under this section the defendants may pass an order prohibiting any motion of the cars, or leaving it to a third person to say when they may move ? With a view to regulate speed can they say that the cars shall not run at all; or shall not run through the summer months because they raise a dust ? If not, how can it be said that they may prohibit altogether the removal of snow and ice, and say that the same shall not be removed unless by consent of a third person ?

These orders are unreasonable. The plaintiffs are bound to maintain a portion of the street in repair, and are liable for accidents. But they are enjoined from doing the very thing that would relieve them from this liability. They are bound to furnish accommodations for passengers. But how are they to do this if there is a snow-drift on the track ? The language should be very explicit in order to involve such a result as is contended for. Here, the power which is given is to regulate ; and the defendants assume authority to prevent. *Austin* v. *Murray,* 16 Pick. 121. *Commonwealth* v. *Stodder,* 2 Cush. 562.

Referring the plaintiffs to a third person for his consent cannot in any sense be considered as the establishment of a rule. This reference might as well be to anybody else as to the superintendent of streets.

HOAR, J. This case comes before us upon demurrer to the bill and supplemental bill of the plaintiffs, and presents the question whether the orders of the aldermen of the city of Cambridge, passed on the 21st of December 1864, and the 22d of March 1865, are valid and authorized by law ; or are in violation of the franchise of the Union Railway Company. As the former order has been repealed, so far as it relates to the tracks mentioned in the second order, the chief question of present practical importance is the validity of the latter.

The order of the 22d of March absolutely forbids the removal of snow and ice from the tracks of the Cambridge Railroad Company, the road leased and used by the Union Railway Company, between Harvard Square in Cambridge and the dividing line between Cambridge and Boston.

The p_aintiffs allege that they have by their charter, and that of the Cambridge Railroad Company whose road they lease, a franchise to lay down upon the surface of the public streets a railway, and to run upon the tracks of such railway cars for the transportation of passengers at all seasons of the year; that having the right to use the tracks with cars, they have, as incident thereto, a right to do whatever is necessary to make the use available, and therefore the right to remove the obstructions of snow and ice which may impede or wholly stop the running of the cars.

The defendants chiefly rely upon the authority vested in them under *St.* 1864, *c.* 229, § 16; which provides that "the board of aldermen of any city, or the selectmen of any town, in which a street railway is operated, may from time to time establish by an order such rules and regulations as to the rate of speed, mode of use of the tracks, and removal of snow and ice from the same, as in their judgment the interest and convenience of the public may require." Does this section authorize the passage of an order entirely prohibiting the removal of snow and ice by the railway company from any part or the whole of its road, and thereby suspending for a time the possibility of running its cars upon the rails?

The *St.* of 1864, entitled "An Act concerning Street Railway Corporations," seems to have been a revision and digest of all the previous legislation on the subject; and, in construing any one of its numerous provisions, it is proper to regard the whole scope and design of the enactment, and the nature of the subject matter to which it applies.

The establishment of street railways was originally an experiment, for the purpose of accommodating the public travel with a cheap and convenient mode of transportation through the streets of towns and cities, which it was supposed would be found compatible with the continued use of the streets for ordinary purposes. They have been found to be of great public benefit; and have now been in use long enough to afford an opportunity for the legislature to determine, in the light of experience, the extent and nature of the privileges which could be

intrusted to the railway companies, and to make their powers and duties to some extent the subject of judicial construction. And it will be found that the legislature have adhered with great uniformity to the policy which was adopted from the outset, of making these corporations subject in a great degree to the direction and control of the board of aldermen of the cities, and the selectmen of the towns, in which their franchise is to be exercised. This control is given to these municipal officers, not as representing a conflicting interest, but as independent bodies, charged with the duty of protecting the rights and promoting the convenience of the whole public. *Cambridge* v. *Cambridge Railroad,* 10 Allen, 57, 58.

That part of the community who use the street cars have the same voice in choosing the aldermen or selectmen, and the same opportunity to influence their judgment, with those who use the streets in other ways. It is obvious that at particular times, and under some circumstances, the right to use the streets with horse cars, and with other vehicles, may conflict with each other. One or the other must yield; and some tribunal must determine which it shall be. In such cases the general convenience must govern.

By the *St.* of 1864, the board of aldermen of cities, and the selectmen of towns, in which street railroads are authorized by law, are in the first place to " locate " the tracks, or such of them as in their judgment the public convenience may require; and may afterward alter the location and position of any tracks. After one year from the opening of the railway for use, they may revoke the location of any tracks, and require the street to be restored to its previous condition. They may order the railway company to discontinue temporarily the use of any tracks, whenever they adjudge that the safety or convenience of the inhabitants requires such discontinuance. Towns and cities may take up the streets in which street railways are " located," and discontinue them, as other streets, without liability to the railway companies for damages.

It is in connection with these broad and comprehensive provisions that we are to consider the power of the defendants " to

make such regulations as to the removal of snow and ice from the tracks as in their judgment the interest and convenience of the public may require." And whether in their judgment it will be for the interest and convenience of the public, giving due consideration to those who use the cars, as well as to all others, that the snow and ice shall be removed by the railway company, or under the direction of the officer having the general charge of the streets, or that it shall be left to the operation of the sun and rain, we think is in each case left wholly to their decision. Whether in any street, having regard to its width, its exposure, and the position of the tracks, it will be practicable to remove the snow to such an extent as to make it passable for the cars without an unreasonable interference with other uses, we cannot determine, and we do not think the legislature meant to determine. If the prohibition to remove the snow occasions the temporary disuse of the tracks, the consequence is no more than is included in a power expressly given.

The reasoning by which the plaintiffs support their claim is very forcible, and would be sound if their franchise were an absolute, instead of an extremely limited and qualified one. Their use of their tracks is necessarily to some extent exclusive, and modifies the right of other persons in travelling. But the use of the whole street is granted to them only in common with others. The snow and ice, which it may be desirable or necessary for their purposes to remove, it may be very important for the convenience of other travellers to retain. The preponderance of public convenience should govern. The power and the duty of deciding which course is advisable are vested by law in the defendants, and we cannot suppose their decision will be made without good reason.

An argument has been pressed upon our attention, derived from the connection in which the power to regulate the removal of snow is found, namely, in the same section which provides for regulating the rate of speed of cars, and the mode of use of tracks; and it is said that in neither case can the power to regulate include the power to prohibit. But it is by no means clear that the right to regulate the mode of the use of the tracks

would not justify a regulation that certain tracks, or those in certain streets, should not be used when there is snow on the ground which would require removal to make the tracks available. And further, while the tracks and the cars are the property of the companies, the snow is not their snow. It comes without their consent or procurement, and its removal is not a necessary part of their franchise. Removing it from the railway tracks might in some cases make the street impassable for ordinary travel, unless great expense and trouble were incurred to remove it from the whole surface. From the nature of the subject, it seems to us that the power of regulation must include the power of partial, and sometimes of total, prohibition.

The only distinct objection made to the order of December 21st 1864, which is not applicable to the order of March 22d 1865, is, that it prohibited the removal of snow and ice without first obtaining the consent of the superintendent of streets; and that the board of aldermen could not delegate their power to another officer. This objection we do not think substantial. The board of aldermen, in passing their order, first create the power, and act in a *quasi* legislative capacity. The nature of the duty is such that it would be difficult to fix beforehand by definite rules the mode and extent of the removal of snow. The exigency is sometimes pressing, not admitting a new order of the board for particular occasions; and the work to be done may be as various as the form and size of snowdrifts. It is a sufficient compliance with the intent of the statute to intrust the execution of the work to the officer having general charge of the condition of the streets; and is in entire analogy with the other provision, which requires the repairs of streets by the railway companies to be made by them "to the satisfaction of the superintendent of streets, the street commissioner or the surveyors of highways."

Being of the opinion, therefore, that it was competent for the defendants to pass either of the orders complained of, the demurrer must be sustained, and the

*Bill dismissed, with costs.*